**AFFIDAVIT**

I, Eric T. McAllister, being duly sworn, hereby depose and state as follows:

**INTRODUCTION AND OFFICER BACKGROUND**

1.    I make this affidavit in support of an application for a search warrant authorizing the search of two residences and a vehicle and the seizure of property located within the residences and vehicle.

2.    I am a Task Force Officer (TFO) with ATF, a Task Force Officer with the Northwest Missouri Drug Task Force (NWMDTF) and a Deputy Sheriff with the Grundy and Daviess County, Missouri Sheriff's Offices. I have been employed in law enforcement for over 26 years and am a certified peace officer through the State of Missouri. I am commissioned through the Grundy and Daviess County Sheriff's Department's in Missouri. I received a Special Deputation Appointment from the United States Marshals Service on March 17, 2003.

3.    During my over 26 years as a law enforcement officer, I have participated in numerous investigations including trafficking of controlled substances. For the past 20 years, I have been primarily responsible for conducting investigations into violations of Title 18, United States Code, Section 922, and Title 21, United States Code, Sections 841 and 846. These investigations have resulted in not only convictions on federal drug and firearm violations, but also in the criminal and civil forfeiture of assets acquired with drug proceeds.

4.    In addition, I have participated in the execution of hundreds of state and federal search warrants for controlled substances and records of drug trafficking. In most of these instances, books, records, or other papers have been found evidencing the trafficking in controlled substances and/or the accumulation and disposition of the trafficker's drug proceeds.

5.      In addition, I have interviewed hundreds of cooperating witnesses and defendants who have provided detailed information concerning their involvement in drug trafficking activities and in the disposition and laundering of the proceeds of drug trafficking. These drug trafficking activities have included the acquisition, transportation, storage, and distribution of controlled substances. The information received has frequently related to record keeping of drug transactions and the use of firearms in furtherance of drug trafficking activities.

## AFFIANT'S KNOWLEDGE FROM TRAINING AND EXPERIENCE

6.      In support of each Application for the aforementioned Search Warrants, I state that based upon my training, experience, and participation in other investigations involving large amounts of methamphetamine, and/or other controlled substances, that persons engaged in large scale drug trafficking organizations typically have the following items on hand at their homes and at locations where they store and sell illegal controlled substances:

a) Substantial amounts of cash reflecting receipts from drug dealing and/or funds used to procure additional drugs for resale.

b) Records detailing the receipt and subsequent sale of drugs, and reflecting amounts of money paid, received, and/or due from purchasers or suppliers of drugs.

c) Digital or other types of scales used to weigh quantities of drugs.

d) Plastic bags, plastic, or other materials used to package drugs for resale.

e) Firearms, ammunition, or other weapons used to protect substantial amounts of drugs and/or United States currency.

f) Financial records (such as automobile titles, automobile insurance records, real estate purchases, and rental records, bank statements, checks, bank account passbooks, receipts, money order and cashier's check copies, wire transfers, deposit items, bank drafts, certificates of deposit, financial statements, loan records, payment journals, false identifications used to acquire assets or make expenditures in alias or nominee names) which reflect the purchase of assets (both personal and real property) and making of personal expenditures using the profits generated from the illegal sale of drugs;

g) Various cutting agents, such as sugar, vitamins, lactose, and other noncontrolled substances, used to dilute methamphetamine, and other controlled substances prior to its resale to generate additional profits.

2

h) Photographs or video showing persons engaged in drug trafficking.

i) Address books listing the names and addresses of the associates, suppliers, and customers of the drug trafficker.

j) Keys or records reflecting the rental or location of safe deposit boxes, mail drops and storage units.

k) Cellular telephones utilized in the drug trade; and

l) Computers, computer software, and computer thumb drives utilized to maintain financial records, including drug transaction records.

7. I further state that based on my training, experience, and participation in other Drug investigations, I know traffickers often place assets in names other than their own to avoid detection of these assets by law enforcement agencies.

a) When drug traffickers place their assets in alias or nominee names, they utilize their own addresses or the addresses of friends and/or relatives in the purchase and titling of those assets.

b) Even when these assets are in other persons' names, the drug traffickers frequently continue to use these assets and exercise dominion and control over them.

c) Because the drug traffickers typically continue to use and maintain control over these assets, they also maintain documents relating their use and control of these assets, which include repair records and service records.

d) When drug traffickers amass large cash proceeds from the sale of drugs, the traffickers frequently attempt to legitimize these profits. To accomplish these goals, drug traffickers often utilize domestic banks, securities, cashier's checks, money drafts, real estate, and business fronts.

e) All individuals, whether their income is from legal, legitimate sources or from illegal sources such as drug trafficking, commonly keep in their homes various papers, records, receipts, and other documents evidencing the disposition of their income. Such disposition includes saving their money, such as making bank deposits and purchasing investments, and spending their money on housing, transportation, living expenses, travel, and recreation. I also know that most individuals, including drug traffickers, keep, in their homes, documents such as bank account records, investment account records, receipts and invoices that show their expenditures or disposition of their income.

f) I have participated in hundreds of state and federal search warrants upon the residences and vehicles of drug dealers and have found such records in the residence and vehicles of drug dealers; and,

g) The courts have recognized that evidence of unexplained wealth is probative of establishing crimes motivated by greed, to include trafficking-controlled substances.

8. This affidavit is intended to show only that there is sufficient probable cause for the requested warrants and does not set forth all my knowledge about this matter.

### LOCATIONS TO BE SEARCHED AND ITEMS TO BE SEIZED

9. The warrant would authorize a search of the following residences and vehicle:

a) The residence of Jeremiah Daniel **Watson** located at 607 East James Road, Gallatin, Missouri 64640 (hereafter referred to as **Subject Location # 1)**, located in the County of Daviess, within the Western Judicial District of Missouri. The residence is a yellow in color single story ranch style residence with an attached wooden deck and a walk out basement. The residence is the second residence west of the intersection of South Searcy Street and East James Road on the north side of East James Road in Gallatin, Missouri. The number "607" is depicted on the front of the attached deck. A photograph of the **Subject Location # 1** is included below.



b) The residence of Larry Wayne **Peace** and Amber Ailene Clevenger located at 808 West Edmond Street, Jamesport, Missouri 64648 (hereafter referred to as **Subject Location # 2),** located in the County of Daviess, within the Western Judicial District of Missouri. The residence is a white in color single story ranch style residence with basement. The residence is the first residence east of the intersection of West Edmond Street and West Charles Street on the south side of West Edmond. The number of "808" is depicted on the front of the residence by the front door. A photograph of the **Subject Location # 2** is included below.



c) The **Subject Vehicle** is a black 1997 Isuzu Hombre single cab pickup truck, bearing Missouri License Plate 5YBV12 and Vehicle Identification Number of 1GGCS1441V8652837. Missouri Department of Revenue records indicate that the **Subject Vehicle** is registered to Jeremiah D. **Watson** and it has a transfer on death designation to Margaret Kneer, at 607 East James Road, Gallatin, Missouri 64640 (**Subject Location # 1**).

## <u>THE WARRANT WOULD AUTHORIZE THE SEIZURE OF THE FOLLOWING ITEMS FROM SUBJECT LOCATION # 1.</u>

a) Books, records, receipts, notes, correspondence, ledgers, and other document or papers relating to the transportation, ordering, purchase, and distribution of controlled substances, in particular methamphetamine;

b) Books, records, receipts, bank statements, cancelled checks, deposit items, bank drafts, money orders, cashier's checks, wire transfer records, passbooks, certificates of deposits, financial statements, real estate purchase and/or rental records (including contracts, deeds, promissory notes, applications, and rental agreements), records reflecting the purchase, sale or lease of automobile(including titles, registration, purchase or lease agreements, and payment records) automobile insurance policy records, keys to automobile; Addresses or telephone books and papers reflecting names, addresses and telephone numbers;

5

c) United States currency related to the distribution of controlled substances;

d) Photographs and photographs of co-conspirators, assets, or controlled substances;

e) Indicia of occupancy, residency, or ownership of the premises listed above;

f) Cellular telephones and contracts, purchase and/or rental agreements, and billing records relative to the acquisition and use of cellular telephones;

g) Methamphetamine, a Schedule II controlled substance and any other controlled substances; and

h) Firearms and ammunition, to include a black semi-automatic nine-millimeter pistol (manufacturer unknown) and nine-millimeter ammunition.

## THE WARRANT WOULD AUTHORIZE THE SEIZURE OF THE FOLLOWING ITEMS FROM THE SUBJECT VEHICLE.

a) Books, records, receipts, notes, correspondence, ledgers, and other documents or papers relating to the transportation, ordering, purchase, and distribution of controlled substances, in particular methamphetamine;

b) Books, records, receipts, bank statements, cancelled checks, deposit items, bank drafts, money orders, cashier's checks, wire transfer records, passbooks, certificates of deposits, financial statements, real estate purchase and/or rental records (including contracts, deeds, promissory notes, applications, and rental agreements), records reflecting the purchase, sale or lease of automobile(including titles, registration, purchase or lease agreements, and payment records) automobile insurance policy records, keys to automobile; Addresses or telephone books and papers reflecting names, addresses and telephone numbers;

c) United States currency related to the distribution of controlled substances;

d) Photographs and photographs of co-conspirators, assets, or controlled substance;

e) Indicia of occupancy, residency, or ownership of the premises listed above;

f) Cellular telephones and contracts, purchase and/or rental agreements, and billing records relative to the acquisition and use of cellular telephones;

g) Methamphetamine, a Schedule II controlled substance and any other controlled substances; and

h) Firearms and ammunition, to include a black semi-automatic nine-millimeter pistol (manufacturer unknown) and nine-millimeter ammunition.

## THE WARRANT WOULD AUTHORIZE THE SEIZURE OF THE FOLLOWING ITEMS FROM SUBJECT LOCATION # 2.

a) Books, records, receipts, notes, correspondence, ledgers, and other documents or papers relating to the transportation, ordering, purchase, and distribution of controlled substances, in particular methamphetamine.

b) Books, records, receipts, bank statements, cancelled checks, deposit items, bank drafts, money orders, cashier's checks, wire transfer records, passbooks, certificates of deposits, financial statements, real estate purchase and/or rental records (including contracts, deeds, promissory notes, applications, and rental agreements), records reflecting the purchase, sale or lease of automobile(including titles, registration, purchase or lease agreements, and payment records) automobile insurance policy records, keys to automobile; Addresses or telephone books and papers reflecting names, addresses and telephone numbers;

c) United States currency related to the distribution of controlled substances.

d) Photographs and photographs of co-conspirators, assets, or controlled substances.

e) Indicia of occupancy, residency, or ownership of the premises listed above.

f) Cellular telephones and contracts, purchase and/or rental agreements, and billing records relative to the acquisition and use of cellular telephones;

g) Methamphetamine, a Schedule II controlled substance, and any other controlled substances; and

h) Firearms and ammunition.

## OFFENSES UNDER INVESTIGATION

10.     I have investigated violations of federal firearms and federal narcotics laws, and based on my experience and training, I know the following to be true:

a) Possession of firearms and ammunition by an individual who is addicted to, or an illegal user of controlled substances is a violation of Title 18, United States Code, Sections 922(g)(3) and 924(a)(8).

b) Using or carrying a firearm during or in relation to any crime of violence or drug trafficking crime or possessing a firearm in furtherance of a drug trafficking offense is a violation of Title 18, United States Code, Section 924(c).

c) Title 21, United States Code, Section 841(a)(1) prohibits the manufacture, distribution, or possession with intent to distribute controlled substances.

7

d) Persons who conspire to manufacture, distribute, or possess methamphetamine with intent to distribute do so in violation of Title 21, United States Code, Section 846.

e) Unlawful use of a communication device to commit or facilitate the commission of drug trafficking offenses is a violation of Title 21, United States Code, Section 843(b).

f) To knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance is a violation of Title 21, United States Code, Section 856.

## BACKGROUND AND ROLES OF INDIVIDUALS UNDER INVESTIGATION

11.     I am currently investigating alleged violations of Federal Laws committed by Jeremiah Daniel **Watson** and Larry Wayne **Peace**, and other persons, both known and unknown.

a) Jeremiah Daniel **Watson**, a/k/a "Niggy or Nig," DOB: 04/08/1974, resides at 607 East James Road, Gallatin, Missouri. Jeremiah **Watson** is the leader of a multiple kilogram methamphetamine distribution conspiracy operating in North Central Missouri and within the Western District of Missouri. Based on my training, experience, and knowledge of this investigation, I believe there is probable cause to conclude that **Watson** is in possession of a nine-millimeter, semi-automatic pistol and possesses that firearm in furtherance of his drug trafficking activities [discussed more fully later in this affidavit]. **Watson's** criminal history includes misdemeanor arrests and convictions for possession of marijuana, drug paraphernalia, and receiving stolen property in Missouri. On May 10, 2023, May 24, 2023, and June 7, 2023, **Watson** sold a total of approximately 21 grams of methamphetamine to cooperating source # 6 (CS #6), who was acting on behalf of law enforcement while conducting controlled purchases. [1] [2]

b) Larry Wayne **Peace**, DOB: 11/22/1985, 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, resides at 808 West Edmond Street, Jamesport, Missouri with his girlfriend, Amber Clevenger. Based on my training, experience, and knowledge of this investigation, I believe there is probable cause to conclude that Larry **Peace** is conspiring with Jeremiah **Watson** to distribute methamphetamine. Based on the evidence summarized later in this affidavit, I believe Larry **Peace** is distributing methamphetamine for Jeremiah **Watson** in Daviess County, Missouri. **Peace's** criminal history includes arrests and convictions for, assault, domestic violence, burglary, and possession of a controlled substance. These arrests and convictions are out of the states of

---

[1] CS #6, prior to the controlled purchases from **Watson**, was searched for any controlled substances, weapons or additional United States currency and provided with a recording and transmitting device. Subsequently, following the transactions; CS #6 was searched again for any excess controlled substances, weapons, or United States currency. All of the controlled purchases of methamphetamine from **Watson** were recorded.

[2] All the methamphetamine in this investigation, purchased by CS # 6, field tested positive for methamphetamine and was or will be sent to the Missouri State Highway Patrol Laboratory for analysis. During every controlled purchase identified in this affidavit, Law Enforcement pre-recorded funds were used to purchase the methamphetamine.

Missouri and Texas. **Peace** has also been incarcerated in both the Missouri Department of Corrections, and the Texas Department of Corrections.

## RELIABILITY STATEMENT RELATED TO COOPERATING SOURCE #1

12.     Cooperating Source #1, (hereafter referred to as CS #1) was cooperating with law enforcement to reduce his/her exposure in a current criminal investigation. CS #1 has provided investigators with reliable information regarding **Watson's** drug trafficking activities. CS #1's information has been corroborated through law enforcement-controlled methamphetamine purchases, law enforcement surveillances, law enforcement contacts, and information provided by the other cooperating sources. CS # 1 is no longer cooperating with law enforcement.

## RELIABILITY STATEMENT RELATED TO COOPERATING SOURCE #2

13.     Cooperating Source #2, (hereafter referred to as CS # 2). CS #2 has provided investigators with reliable information regarding **Watson's** drug trafficking activities. CS #2's information has been corroborated through law enforcement-controlled methamphetamine purchases, law enforcement surveillances, law enforcement contacts, and information provided by the other cooperating sources. CS # 2 is no longer cooperating with law enforcement.  CS # 2 provided information to law enforcement officials following an arrest for an unrelated criminal offense and the information that CS #2 provided was provided voluntarily without any promises or compensation by law enforcement officials.

## RELIABILITY STATEMENT RELATED TO COOPERATING SOURCE #3

14.     Cooperating Source #3, (hereafter referred to as CS # 3) is cooperating with law enforcement to reduce his/her exposure in a current criminal investigation. CS #3 has provided investigators with reliable information regarding **Watson's** drug trafficking activities. CS #3's information has been corroborated through law enforcement-controlled methamphetamine purchases, law enforcement surveillances, law enforcement contacts, and information provided by the other cooperating sources. CS # 3 is no longer cooperating with law enforcement.

## RELIABILITY STATEMENT RELATED TO COOPERATING SOURCE #4

15.     Cooperating Source # 4, (hereafter referred to as CS # 4) has provided investigators with reliable information. CS # 4's information has been corroborated through law enforcement-controlled methamphetamine purchases, law enforcement surveillances, law enforcement contacts, and information provided by the other cooperating sources. CS # 4 is no longer cooperating with law enforcement. CS # 4 was voluntarily cooperating with law enforcement officials.  CS # 4 has not received compensation for his/her cooperation.

## RELIABILITY STATEMENT RELATED TO COOPERATING SOURCE #5

16.     Cooperating Source # 5, (hereafter referred to as CS # 5) has provided investigators with reliable information. CS # 5's information has been corroborated through law enforcement-controlled methamphetamine purchases, law enforcement surveillances, law enforcement contacts, and information provided by the other cooperating sources. CS # 5's past information has proved reliable, and that information had led to arrests and convictions in State of Missouri jurisdictions. CS # 5 is no longer cooperating with law enforcement. CS # 5 voluntarily provided information to law enforcement officials following a traffic related incident.

## RELIABILITY STATEMENT RELATED TO COOPERATING SOURCE # 6

17.     Cooperating Source # 6, (hereafter referred to as CS # 6) has provided investigators with reliable information regarding **Watson's** drug trafficking activities. CS # 6's information has been corroborated through law enforcement-controlled methamphetamine purchases, law enforcement surveillances, law enforcement contacts, and information provided by the other cooperating sources. CS # 6 continues to cooperate with law enforcement.  CS # 6 is cooperating with law enforcement officials on a volunteer basis.  CS # 6 has received some compensation for his/her cooperation, but he/she may receive compensation at a later time.

**PROBABLE CAUSE**

18.    In the fall of 2022, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and the Northwest Missouri Drug Task Force (NWMDTF) initiated an armed drug trafficking investigation on Jeremiah Daniel **Watson** in Daviess County, Missouri. Based on information received from cooperating sources and other law enforcement officers, it was determined that Jeremiah Daniel **Watson** is possessing firearms in furtherance of drug trafficking and distributing large quantities of methamphetamine within the Western District of Missouri.

## NOVEMBER 2022, INTERVIEW WITH CS # 1

19.    In November of 2022, Northwest Missouri Drug Task Force Officers conducted an interview with CS # 1 in reference to Jeremiah Daniel **Watson**. CS # 1 stated that **Watson**, who CS # 1 referred to as, "Niggy," lives at the residence located at 607 East James Road in Gallatin, Missouri, within the Western District of Missouri (**Subject Location # 1**), and is a multi-pound quantity dealer of methamphetamine and distributes the methamphetamine out of **Subject Location # 1** to various persons in and around Gallatin, Missouri. Specifically, in a period of a week prior to this interview, CS # 1 indicated that he/she observed a large plastic container of methamphetamine in **Watson's** bedroom underneath the bed. CS # 1 estimated the container was a foot long and contained over one pound of methamphetamine. In addition to methamphetamine, CS # 1 reported that he/she had observed numerous firearms inside **Subject Location # 1** to include AR type rifles, shotguns and a black in color Glock or Glock type pistol. CS # 1 advised these firearms, along with methamphetamine, are all maintained inside of **Watson's** bedroom within **Subject Location # 1**. CS # 1 stated that **Watson** is sourced with methamphetamine from the Kansas City area. CS # 1 stated **Watson** works at an unknown location in the Kansas City area and acquires the methamphetamine after work.

## JANUARY 2023 INTERVIEW WITH CS # 2

20.     In January of 2023, a Daviess County, Missouri Deputy Sheriff conducted an interview with CS # 2 regarding Jeremiah **Watson**. CS # 2 stated Jeremiah **Watson** travels to the Kansas City area from **Subject Location # 1** every two weeks and obtains two kilograms of methamphetamine. CS # 2 stated **Watson** takes approximately $10,000 in United States currency to purchase the two kilograms of methamphetamine and brings the purchased methamphetamine back to **Subject Location # 1** for distribution.

21.     On January 19, 2023, at approximately 0815 hours, Drug Task Force Officers conducted mobile surveillance on Jeremiah **Watson** driving the **Subject Vehicle**. Surveillance followed the **Subject Vehicle** from Gallatin, Missouri to the Liberty, Missouri area (approximately 57 miles) before losing the **Subject Vehicle** in heavy traffic. At approximately 1350 hours, surveillance observed the **Subject Vehicle** return to the **Subject Location # 1**.

## MARCH 2023 INTERVIEW WITH CS # 3

22.     On March 27, 2023, Northwest Missouri Drug Task Force Officers conducted an interview with CS # 3. CS # 3 stated the biggest methamphetamine dealer in the area was a guy named "Niggy" from Gallatin, Missouri. I believe, based on my training, experience, and participation in this investigation, that "Niggy" is the nickname used by Jeremiah **Watson**. This belief is corroborated by the November 2022, interview with CS # 1 and the May 2023 interview with CS # 6 in which both CSs advised **Watson** uses the moniker of, "Niggy" and that he is a methamphetamine dealer from Gallatin, Missouri.

23.     On April 6, 2023**,** at approximately 0950 hours, surveillance observed Jeremiah **Watson** driving the **Subject Vehicle** in Gallatin, Missouri. The **Subject Vehicle** was followed to a location in the Liberty, Missouri area. Surveillance lost the **Subject Vehicle** at that time.

## APRIL 6, 2023, INTERVIEW WITH CS # 4

24.     On April 6, 2023, Task Force Officers conducted an interview with CS # 4. CS # 4 stated from approximately January 15, 2023, until March 15, 2023, CS # 4, along with an unindicted co-conspirator, travelled to **Subject Location # 2** to acquire methamphetamine from Larry **Peace**. CS # 4 stated the unindicted co-conspirator purchased anywhere from one quarter of an ounce (approximatley7 grams) to up to two ounces (approximately 56 grams) of methamphetamine on average from **Peace**, every other day, during the two-month span from **Subject Location # 2**. CS # 4 advised that **Peace** was sourced with methamphetamine from a subject by the name, "Critter" or similar name in Gallatin, Missouri. I know, based on my participation in this investigation, that surveillance has observed Larry **Peace** on numerous occasions, during the timeframe of this investigation, at **Subject Location # 1**. I further believe, based on my training, experience, and participation in this investigation, that Larry **Peace** is sourced with methamphetamine by Jeremiah **Watson** and **Watson's** methamphetamine was sold to CS # 4 and the unindicted co-conspirator by Larry **Peace** from **Subject Location # 2**. I also believe, based on my training, experience, and participation in this investigation, that when CS # 4 described the source of supply for methamphetamine in Gallatin, Missouri by the name similar to, "Critter" that he was referring to Jeremiah **Watson**, who uses the nickname of, "Niggy and Nig."

## APRIL 10, 2023, INTERVIEW WITH CS # 5

25.     On April 10, 2023, a Grundy County, Missouri Deputy Sheriff conducted an interview with CS # 5. CS # 5 stated the main source of supply for methamphetamine in Gallatin, Missouri is a subject that goes by the nickname of, "Nig" who lives in Gallatin, Missouri. CS # 5 said that "Nig" has various persons that assist his drug dealing activities by, "making runs."  I believe, based on my training, experience, and participation in this investigation, that when CS # 5 refers to, "Nig," that CS # 5 is referring to Jeremiah **Watson**. This belief is based on corroborating statements made by CS # 1, CS # 2 and CS # 6 in which CS # 1 and CS # 6 identified Jeremiah

**Watson**'s nickname as, "Niggy and or Nig." I also know, based on my training, experience and participation in this and other drug trafficking investigations that the term, "Making runs" refers to traveling to acquire methamphetamine or other controlled substances from a source of supply location.

## MAY 3, 2023, INTERVIEW WITH CS # 6

26.     On May 3, 2023, Task Force Officers interviewed CS # 6 in reference to Jeremiah **Watson** possessing and distributing methamphetamine. CS # 6 stated **Watson** uses the moniker of, "Niggy or nig." CS # 6 stated **Watson** lives at **Subject Location # 1** and drives the **Subject Vehicle**, along with a black Mercedes Benz[3] passenger car. CS # 6 stated **Watson** acquires approximately ten pounds of methamphetamine per month from an unidentified source of supply in the Kansas City area and uses both the **Subject Vehicle** and the black Mercedes Benz car to transport the methamphetamine from the source of supply back to **Subject Location # 1.**

27.     CS # 6 stated that Larry **Peace**, from Jamesport, Missouri [**Subject Location # 2**], often travels with **Watson** to obtain the methamphetamine in the Kansas City area. This statement, made by CS # 6, is corroborated by law enforcement surveillance on April 1, 2023, and April 22, 2023, in which **Watson** and **Peace** were observed leaving together from **Subject Location # 1** and traveling together to an unknown location.

28.     CS # 6 stated that **Watson** carries a black semi-automatic nine-millimeter pistol (manufacturer unknown) while transporting and conducting methamphetamine sales. **Watson** possesses the semi-automatic pistol under the driver's seat of the vehicle he is driving and inside **Subject Location # 1.**

---

[3] The black two door Mercedes Benz has Missouri License of TE2C6P and is registered to Andrus Construction L.L.C at 30712 Timberlake Village, Rocky Mount, Missouri 65072 on a 1999 Mercedes Benz. Investigators know this vehicle is often driven by **Watson** and is commonly parked at **Subject Location # 1.**

14

29.     Further, CS # 6 advised **Watson** maintains two safes, a large one and a small one, inside **Subject Location # 1** and **Watson** keeps substantial amounts of United States currency inside of the safes. In addition, **Watson** maintains, inside of **Subject Location # 1,** security cameras and multiple loaded firearms that are positioned throughout **Subject Location # 1.**

## MAY 10, 2023, CONTROLLED PURCHASE OF METHAMPHETAMINE FROM SUBJECT LOCATION # 1

30.     On May 10, 2023, CS # 6, acting on behalf of Law Enforcement, purchased approximately 7 grams of methamphetamine for $200 in law enforcement pre-recorded investigative funds from Jeremiah **Watson** inside **Subject Location # 1.** Prior to the methamphetamine transaction, CS # 6 exchanged text messages with **Watson**, who was utilizing telephone number 660-605-0175,[4] to arrange the methamphetamine purchase. Upon arrival of CS # 6 at **Subject Location # 1,** surveillance observed the **Subject Vehicle** parked at **Subject Location # 1**. CS # 6 met with **Watson** in the basement area of **Subject Location # 1** and purchased approximately 7 grams of methamphetamine directly from **Watson**. During the purchase of methamphetamine **Watson** told the CI about an incident where he [**Watson**] was transporting a pound of methamphetamine. **Watson** stated, "The fuzz about had me the other night in that Mercedes when I was going down on a run…I had a fucking pound laying in the floorboard of that son of a bitch…I drove all the way from the fucking city…hour drive all the way back…as soon as I get off of the god damn interstate there at Winston [Missouri]…the mother fucker is set right there with his lights out…Over there at the side of the fucking truck stop there…you know…He flipped his lights on… his headlights on… not the cherries…I'm guaranteeing he's regretting not flipping his cherries on when he had the chance."  I believe, based on my training, experience, and participation in this investigation, that **Watson**, driving the black Mercedes Benz car, was in possession of one pound of

---

[4] On March 7, 2023, results were received from an investigative subpoena that was served on representatives of Tracfone requesting subscriber information related to telephone number 660-605-0175.  The response indicated that 660-605-0175 was subscribed to Jeremiah **Watson** at 607 East James Road, Gallatin, Missouri, which is **Subject Location # 1**

methamphetamine acquired from **Watson's** source of supply in the Kansas City area and was transporting the methamphetamine back to **Subject Location # 1** and was nearly stopped by law enforcement. At the conclusion of the methamphetamine purchase, CS # 6 was debriefed by law enforcement. CS # 6 stated that he/she observed **Watson**, inside of **Subject Location # 1,** possessing an additional 2.5 pounds of methamphetamine.  CS #6 also reported that he/she noticed that **Watson** was in possession of the black nine-millimeter semi-automatic pistol, which was laying on the bed next to **Watson** during the methamphetamine transaction. During the transaction, CS # 6 also observed Watson smoking methamphetamine.  This controlled transaction was recorded by a clandestine audio recording device.

### MAY 24, 2023, CONTROLLED PURCHASE OF METHAMPHETAMINE FROM SUBJECT LOCATION # 1

31.     On May 24, 2023, CS # 6, acting on behalf of law enforcement officials, purchased approximately 7 grams of methamphetamine for $200 in law enforcement pre-recorded investigative funds from Jeremiah **Watson** inside **Subject Location # 1.** Prior to the methamphetamine transaction, CS # 6 exchanged text messages with **Watson** on telephone number 660-605-0175 to arrange the methamphetamine purchase. Upon arrival of CS # 6 at **Subject Location # 1,** surveillance observed the **Subject Vehicle** parked at **Subject Location # 1.** CS # 6 met with **Watson** in the basement area of **Subject Location # 1** and purchased approximately 7 grams of methamphetamine directly from **Watson**. At the conclusion of the methamphetamine purchase, CS # 6 was debriefed by law enforcement. CS # 6 stated **Watson**, inside of **Subject Location # 1,** possessed an additional 5 ounces of methamphetamine. Also, **Watson** was in possession of the black nine-millimeter semi-automatic pistol, which was laying on the bed next to **Watson** during the methamphetamine transaction. This controlled transaction was recorded by a clandestine recording device.

## JUNE 7, 2023, CONTROLLED PURCHASE OF METHAMPHETAMINE FROM SUBJECT LOCATION # 1

32.     On June 7, 2023, CS # 6, acting on behalf of law enforcement officials, purchased approximately 7 grams of methamphetamine for $200 in law enforcement pre-recorded investigative funds from Jeremiah **Watson** inside **Subject Location # 1**. Prior to the methamphetamine transaction, CS # 6 exchanged text messages with **Watson** on telephone 660-605-0175 to arrange the methamphetamine purchase. Upon arrival of CS # 6 at **Subject Location # 1**, surveillance observed the **Subject Vehicle** parked at **Subject Location # 1**. CS # 6 met with **Watson** in the basement area of **Subject Location # 1** and purchased approximately 7 grams of methamphetamine directly from **Watson**. During the purchase of methamphetamine **Watson** received a telephone call and had a conversation with a co-conspirator in the presence of CS # 6. That telephone conversation was also captured by the clandestine law enforcement recording device. During the call, **Watson** told the co-conspirator that he was, "out until tomorrow…just got rid of the last of it." Based on my training, experience, and participation in this investigation, I believe when **Watson** stated, "out until tomorrow" and "just got rid of the last of it," he is referring to methamphetamine and that he was indicating to the caller that he had just sold the last of the methamphetamine in his possession to CS # 6. The telephone call continued with the co-conspirator and **Watson** discussing several other persons that might possess methamphetamine to sell to the co-conspirator. **Watson** stated, "I don't think Larry has anything." The co-conspirator stated, "Well…that's who I was going to call next." I further believe, based on my training, experience, and participation in this investigation, that when **Watson** referred to, "Larry" that he is referring to Larry **Peace** at **Subject Location # 2** and that **Peace** was also out of methamphetamine for sale**.** This belief is based on the fact **Watson** is the source of supply for methamphetamine and documentation of that belief has been articulated throughout this affidavit and corroborated by information received from CS # 6, law enforcement surveillances, and by **Watson's** own statements made during a recorded contacts with CS # 6 during

the controlled methamphetamine purchases. This controlled transaction was recorded by a clandestine recording device.

## SURVEILLANCE INCIDENTS INVOLVING LARRY PEACE AND SUBJECT LOCATIONS # 1 AND # 2.

33.     On March 14, 2023, at approximately 1831 hours, surveillance observed Larry **Peace** arrive at **Subject Location # 1** driving a blue Ford Escape.[5] At approximately 1857 hours, Larry **Peace** left **Subject Location # 1.**

34.     On March 18, 2023, at approximately 1622 hours, surveillance observed Larry **Peace** arrive at **Subject Location # 1** driving the blue Ford Escape and contact **Watson** outside near the garage. At approximately 1711 hours, Larry **Peace** left **Subject Location # 1.**

35.     On March 23, 2023, at approximately 1638 hours, surveillance observed Larry **Peace** arrive at **Subject Location # 1** driving the blue ford Escape and enter **Subject Location # 1.** At approximately 1748 hours, **Peace** left **Subject Location # 1**. Surveillance followed **Peace**, driving the blue Ford escape directly to **Subject Location # 2.**

36.     On March 25, 2023, at approximately 0952 hours, surveillance observed Larry **Peace** arrive at **Subject Location # 1** driving the blue Ford Escape and enter the residence. At approximately 1032 hours, Larry **Peace** left **Subject Location # 1.**

37.     On March 29, 2023, at approximately 1946 hours, surveillance observed Larry **Peace** arrive at the **Subject Location # 1** driving the blue Ford Escape. At approximately 2001 hours, surveillance observed **Watson** arrive at the **Subject Location # 1** and contact **Peace**. **Watson** and **Peace** entered the residence of the **Subject Location # 1**. At approximately 2021 hours, Larry **Peace** left the **Subject Location # 1** in the Ford Escape.

---

[5] The Blue Ford Escape has Missouri License Plates of EH6G7Z and is registered Bill Parker at 808 Edmond Street, Jamesport, Missouri. This vehicle is commonly driven by Larry **Peace** and Amber Clevenger. Law Enforcement surveillance has observed this vehicle sitting, almost exclusively, at **Subject Location # 2** during the timeframe of this investigation.

18

38.     On April 1, 2023, at approximately 1524 hours, surveillance observed Larry **Peace** and an unidentified female arrive at **Subject Location # 1** driving the blue Ford Escape. A short time later, the Ford Escape left **Subject Location # 1** with **Peace** remaining at **Subject Location # 1** with **Watson**. At approximately 1600 hours, surveillance observed **Watson** and **Peace** leave **Subject Location # 1** driving the black Mercedes Benz. At approximately 2141 hours, (5 hours and 41 minutes later) surveillance observed **Watson** and **Peace** return to the **Subject Location # 1** in the Mercedes Benz. I believe based on my training, experience, and participation in this investigation that **Watson** and **Peace** travelled to an unidentified location to acquire methamphetamine. This belief is based, in part, on information provided by CS # 6, who stated that **Watson** and **Peace** travel together to acquire methamphetamine and either drive the Mercedes Benz or the **Subject Vehicle.**

39.     On April 3, 2023, at approximately 1948 hours, surveillance observed Larry **Peace** arrive at **Subject Location # 1** in the blue Ford Escape and contact **Watson** outside of the residence. At approximately 2034 hours, Larry **Peace** left **Subject Location # 1**.

40.     On April 13, 2023, at approximately 1505 hours, surveillance observed a red Chevrolet Impala park in front of **Subject Location # 2** and drop a white male subject off who entered the residence. The impala left **Subject Location # 2**. At approximately 1527 hours, (approximately 12 minutes later) the white male subject walked out of **Subject Location # 2** and walked away from the residence. I believe, based on my training, experience, and participation in this investigation, that short-term traffic, such as this above-described 12 minutes of interaction, is indicative to residences that are being utilized to sell controlled substances, such as methamphetamine.

41.     On April 14, 2023, at approximately 2027 hours, surveillance observed Larry **Peace** arrive at **Subject Location # 1** driving the green Honda Civic[6] and contact **Watson** outside of the **residence**. At approximately 2235 hours, **Peace** left **Subject Location # 1.**

42.     On April 22, 2023, at approximately 1343 hours, surveillance observed Larry **Peace** arrive at **Subject Location # 1** driving the green Honda Civic and enter the residence. At approximately 1433 hours, **Peace** and **Watson** left **Subject Location # 1** in the green Honda Civic. At approximately 2251 hours, **Peace** and **Watson** returned to **Subject Location # 1.** I believe, based on my training, experience, and participation in this investigation, that **Watson** and **Peace** travelled to an unidentified location to acquire methamphetamine. This belief is based, in part, on information provided by CS # 6, who stated that **Watson** and **Peace** travel together to acquire methamphetamine and either drive the Mercedes Benz or the **Subject Vehicle.**

43.     On April 27, 2023, at approximately 0536 hours, surveillance observed Larry **Peace** arrive at **Subject Location # 1** driving the green Honda Civic and enter the **residence**. At approximately 0906 hours, **Peace** left **Subject Location # 1.**

44.     On May 6, 2023, at approximately 1657 hours, surveillance observed Larry **Peace** arrive at **Subject Location # 1** driving the green Honda Civic and enter the **residence**. At approximately 1849 hours, **Peace** left **Subject Location # 1.**

45.     On May 7, 2023, at approximately 0108 hours, surveillance observed, what was believed to be the green Honda Civic, arrive at **Subject Location # 1.** At approximately 0113 hours, (approximately 5 minutes later) the green Honda Civic left **Subject Location # 1.** I believe, based on my training, experience, and participation in this investigation, that Larry **Peace** was the driver of the green Honda Civic that arrived at **Subject Location # 1**. I also believe that the short nature

---

[6] The Green Honda Civic has Missouri License Plates of BB7T7R and is registered to Cleaning Bros LLC at 801 Mill Street, Gallatin, Missouri on a 1999 Honda. This vehicle is commonly driven by Larry **Peace** and is almost exclusively parked at **Subject Location # 2.** This vehicle, however, used to be parked in the driveway of **Subject Location # 1** prior to Larry **Peace** assuming control. On June 7, 2023, Larry **Peace**, driving the green Honda Civic, was involved in a vehicle accident in Daviess County, Missouri, thus leaving the Honda Civic undriveable.

of this meeting **at Subject Location #1** is consistent with **Watson** and **Peace** conducting a drug transaction.

46.    On May 15, 2023, at approximately 1807 hours, surveillance observed Larry **Peace** arrive at **Subject Location # 1** driving the blue Ford Escape and contact **Watson** outside of the residence. At approximately 1809 hours, (approximately 2 minutes later) **Peace** left **Subject Location # 1.**

47.    On May 18, 2023, at approximately 1453 hours, surveillance observed Larry **Peace** arrive at **Subject Location # 1** driving the green Honda Civic and enter the residence. At approximately 1520 hours, **Peace** left **Subject Location # 1.**

48.    On May 25, 2023, at approximately 2034 hours, surveillance observed Larry **Peace** arrive at **Subject Location # 1** driving the green Honda Civic and enter the residence. At approximately 2134 hours, **Peace** left **Subject Location # 1.**

49.    On May 28, 2023, at approximately 1930 hours, surveillance observed the **Subject Vehicle** parked at **Subject Location # 2. Watson** was observed in the front yard.  I believe, based on my training, experience, and participation in this investigation, that **Watson**, driving **Subject Vehicle,** traveled from to **Subject Location # 2,** to deliver a quantity of methamphetamine to **Peace**. This belief is articulated throughout this affidavit regarding the co-conspiratorship between **Watson** and **Peace.**

50.    On June 5, 2023, at approximately 2345 hours, surveillance observed Larry **Peace**, driving the Honda Civic, leave **Subject Location # 2**. On June 6, 2023, at approximately 0002 hours, surveillance observed a vehicle matching the description of the green Honda Civic, typically driven by Larry **Peace**, arrive at **Subject Location # 1** and contact **Watson**. At approximately 0014 hours, the vehicle believed to be occupied by **Peace**, left **Subject Location # 1.** At approximately 0030 hours, surveillance observed the green Honda Civic arrive back at **Subject Location # 2.** I believe, based on my training, experience, and participation in this investigation, that Larry **Peace**, driving

21

the green Honda Civic, drove the approximate fifteen-minute drive to **Subject Location # 1,** met with **Watson** and acquired an undetermined amount of methamphetamine and then returned to **Subject Location # 2.** This belief is based, in part, on information from CS # 4 and CS # 6 that **Watson** and **Peace** are involved together in methamphetamine distribution, that short-term vehicle or pedestrian traffic coming and going from a residence is indicative of drug sales from that residence, and **Watson's** own statement made during the June 7, 2023, controlled methamphetamine purchase from **Watson**, in which **Watson** implicated **Peace** in methamphetamine trafficking.

51.     On June 9, 2023, at approximately 2102 hours, Larry **Peace** left **Subject Location # 2** driving the blue Ford Escape.  At approximately 2144 hours, a vehicle, believed to be the blue Ford Escape arrived at **Subject Location # 1**.  At approximately 2220 hours, the vehicle believed to be the blue Ford Escape, left **Subject Location # 1**, and returned to **Subject Location # 2** at approximately 2237 hours.  I believe, based on my training, experience, and participation in this investigation, that **Peace**, driving the blue Ford Escape, traveled to **Subject Location # 1**, met with **Watson**, and purchased an unknown quantity of methamphetamine and then returned to **Subject Location # 2** with the purchased methamphetamine. This belief is based on the information contained within this affidavit, that **Peace** is a methamphetamine dealer, and obtains his methamphetamine from **Watson** and distributes that methamphetamine from **Subject Location # 2**. These beliefs have been corroborated through interviews conducted with CS # 6, law enforcement surveillances of **Peace** and **Watson,** and Watson's own statements made on a law enforcement recording during a controlled methamphetamine purchase on June 7, 2023.

52.     On June 12, 2023, Larry **Peace** left **Subject Location # 2,** driving the blue Ford Escape.

53.     Based on my training and experience, I know that drug traffickers commonly utilize firearms to further their drug trafficking offenses.  As drug traffickers commonly have valuable drugs and illicit drug proceeds on their person or in their residences or vehicles, they are frequently

22

the targets of robbery. As drug traffickers are engaged in illicit activity, it is very common for them to believe that they are unable to go to law enforcement officials for protection. Accordingly, many drug traffickers utilize firearms to protect themselves, their drugs, and their illicit drug proceeds. Drug traffickers also commonly possess ammunition as their firearms have limited utility without ammunition. Based on my training, experience and the facts summarized in this affidavit, I believe that **Watson** has utilized a black nine-millimeter handgun during multiple controlled purchases of methamphetamine and that he has numerous firearms in **Subject Location #1** that he utilizes to further his drug trafficking offenses.

54.     On June 18, 2023, at approximately 1729 hours, Larry **Peace** left **Subject Location # 2**, driving the blue Ford Escape. At approximately 1811 hours, Peace arrived at **Subject Location # 1** driving the Ford Escape and entered the residence. At approximately 1833 hours, **Peace** left **Subject Location # 1** and at approximately 1852 hours, **Peace**, driving the Ford Escape, returned to **Subject Location # 2.** At approximately 2048 hours and 2115 hours, surveillance observed two vehicles arrive at **Subject Location # 2.** On both occasions, a male subject, believed to be **Peace**, contacted the occupants of the vehicles, either at the vehicle or at the front entrance of the residence. These contacts lasted less than ten minutes, with one of the contacts lasting approximately one minute. I believe, based on my training, experience, and participation in this investigation, that **Peace**, left **Subject Location # 2** and drove to **Subject Location # 1** to acquire methamphetamine. I further believe that **Peace** returned to **Subject Location # 2** and sold an unknown quantity of methamphetamine to the occupants of the two vehicles that arrived at **Subject Location # 2.** As stated throughout this affidavit, short term vehicle and pedestrian traffic is indicative of drug trafficking.

55.     Based on my training and experience, I know that drug traffickers commonly possess and utilize business records such as ledgers, bank records, deposit receipts and wire transfer records. They commonly have these business records in their residences or locations where they engage in

drug trafficking because these records are part of their drug trafficking activities. They utilize them to track their drug sales, their revenues, and debts. I also know that drug traffickers commonly use multiple cellular phones as part of their drug trafficking activities. Drug traffickers commonly use multiple phones in an effort to conceal their illicit drug trafficking.

56.     I believe, based on my training, experience and participation in this investigation, the evidence set forth in this affidavit demonstrates that Jeremiah **Watson**, Larry **Peace** and others known and yet unknown, have conspired to commit, have committed, are committing, and will continue to commit offenses including the distribution of controlled substances (specifically methamphetamine), possession with intent to distribute controlled substances, conspiracy to distribute controlled substances, use of wire facilities to facilitate the commission of the above offenses, knowingly using a place for the purpose of distributing controlled substances, and engaging in a continuing criminal enterprise, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 846, 848, and 856. The facts contained herein also support a probable cause that Jeremiah **Watson** is possessing firearm(s) in furtherance of his drug trafficking crimes and being a current drug user in possession of firearms, all in violation of Title 18, United States Code, Sections 924(C) and 922(G)(3). I believe there is probable cause to believe that the items identified in this affidavit to be seized and that are linked to the aforementioned federal offenses are located at: **SUBJECT LOCATION # 1** - 607 East James Road, Gallatin, Missouri 64640, **SUBJECT LOCATION # 2 -**

808 West Edmond Street, Jamesport, Missouri 64648 and inside **SUBJECT VEHICLE** - black

1997 Isuzu Hombre single cab pickup truck, with Missouri License Plates of 5YBV12 and Vehicle

Identification Number of 1GGCS1441V8652837.

_Eric McAllister_

ERIC T. MCALLISTER
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to ~~before me~~

this ___21st___ day of June 2023.          By telephone at 3:27 pm

HONORABLE W. BRIAN GADDY
United States Magistrate Judge
Western District of Missouri